**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 06-1012 JB

MICHAEL MANSFIELD,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Objection to Presentence Report ("PSR"), filed October 13, 2006 (Doc. 27). The Court heard the objections to the PSR at the sentencing hearing held on November 20, 2006. The primary issues are whether: (i) the United States Probation Office ("USPO") has accurately stated the date of arrest and length of custodial status; and (ii) whether the Court should increase the offense level because Defendant Michael Mansfield used an "object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury . . . ." U.S.S.G. § 2B3.1(b)(2)(E), Application Note 2. Because the Court concludes that the PSR should be altered to more accurately reflect Mansfield's arrest and custody dates, and because Mansfield withdrew his objection concerning the enhancement to the offense level for using or brandishing a weapon, the Court will sustain his objections in part and deny them in part.

**FACTUAL BACKGROUND**

**1. Brandishment or Use of Gun.**

**a. Facts of First Robbery (Count One).**

As noted in paragraph 38 of the PSR, during the course of the February 17, 2006 Bank of the West robbery, at 290 Arenal in Albuquerque, New Mexico, Mansfield demanded money, and then, after instructing the victim teller to look at him, Mansfield reached for his waistband and grabbed an object located underneath his sweatshirt. The victim teller believed the object was a firearm, as not only was it in the "shape of a gun," but Mansfield grabbed the object in an intimidating, threatening manner. PSR ¶ 38, at 10. The victim teller at the Bank of the West described Mansfield as "touching his gun under the sweater[.]" Voluntary Handwritten Statement of Flor Arguello to Bernalillo County Sheriff's Department at 1 (dated February 17, 2006). In an interview the same day with a Bernalillo County Sheriff's Department Detective, Arguello stated that, after telling her to give him the money, Mansfield "grabbed a bulge under his sweater" and that she "believed the bulge was a gun." Bernalillo County Sheriff's Department, State of New Mexico Uniform Incident Report at 0017 (dated February 17, 2006). Although Arguello never saw any part of the weapon, she was sure "that it was a big gun." Id. at 0021. In a subsequent interview with the FBI, also conducted the same day as the robbery, Arguello stated:

> While [Arguello] collected the money, the ROBBER repeated his demand by saying, "Give me the money, hurry, look." At this point he reached for his waistband and grabbed at object located underneath his sweatshirt. Arguello though[t] that the object the ROBBER grabbed was in the "shape of a gun."

FBI, Form FD-302 at 1 (dated February 24, 2006)(summarizing interview of Flor Arguello on February 17, 2006).

**b. Facts of Second Robbery (Count Three)**.

As noted in paragraph 46 of the PSR, during the course of the March 22, 2006 Wells Fargo Bank robbery at 3701 Constitution in Albuquerque, after demanding money, and while keeping his

hand in his pocket, Mansfield, in an intimidating and threatening manner, told the victim teller: "I have a gun in my pocket." The victim teller believed Mansfield when he said he had a gun in his pocket.

The United States has provided a Robbery Victim/Witness Question and Statement Form (dated March 22, 2006)("Chavez Witness Form"), which is a two-page handwritten statement that victim teller Marissa Chavez provided. On page 2 of that exhibit, Chavez describes Mansfield's actions:

> I asked [the robber] what I could do for him and he responded by saying "Give me 50s and 100s don't make me use this gun" (he had one hand in pocket and pointed w/it as he said this). I slid the book back to him w/money inside of it. He then slid the book back to me very aggressively and said "give me everything, 20s, 10s . . . don't say anything" and again pointed with his hand in his pocket (gesturing a weapon).

Chavez Witness Form at 2. On the same page, Chavez also described the object as "[w]eapon in pocket . . . . never exposed to me." Id. In a subsequent interview with the FBI conducted the same day of the robbery, Chavez advised that the robber told her that he had a gun in his pocket and kept his left hand in his pocket. See FBI, Form FD-302 at 1 (dated March 22, 2006)(summarizing interview of Marissa Chavez on March 22, 2006). Chavez further advised that she could not tell if he actually had a gun in his pocket. See id.

Another teller at the bank also observed Mansfield's movements during the robbery. Rosa Lea Bicego confirmed that the robber kept his hand in his pants pocket in a manner that made her suspect that he had a weapon. See FBI, Form FD-302 at 1(dated March 22, 2006)(summarizing interview of Rosa Lea Bicego on March 22, 2006). Bicego also heard the robber say words to the effect of "give me the money in your drawer, 100s and 50s and don't make me use this." Id.

Mansfield denied ever having a gun or threatening anyone with a gun. There are surveillance

photographs and/or video of each of the four bank robberies showing Mansfield's hands, and never with a gun or any weapon.

**2. Date of Arrest.**

According to paragraph 14 of the PSR, on April 13, 2006, the FBI received an anonymous tip indicating that Mansfield was responsible for the bank robberies. It therefore appears that, two days before the traffic stop of Mansfield, the FBI was targeting him.

Mansfield was stopped on April 15, 2006, for a traffic offense. In paragraph 75, on page 19, the PSR notes that, on April 15, 2006, the Albuquerque Police Department cited Mansfield for traffic-related matters. He received four citations. At that time, it was determined that Mansfield had outstanding traffic related warrants, and was taken into, and held in, custody because of outstanding warrants on other traffic offenses. The date on the ticket is April 15, 2006. There is also a Bernalillo County Metropolitan Detention Center Property Inventory Sheet that the Property Technician initialed on April 15, 2006. There is also a copy of the Bernalillo County Property Receipt Report indicating Mansfield's property was received on April 15, 2006.

Mansfield, through his ex-wife, posted a bond. Mansfield was not released, however. On September 25, 2006, the Probation Officer contacted the FBI case agent, who advised that a federal detainer was issued against Mansfield on April 20, 2006 at approximately 2:00 a.m., because of the federal hold placed on him. The case agent provided a copy of the federal detainer, which is dated April 20, 2006.

The FBI apparently put a hold on Mansfield once he was in state custody. His release date on the traffic-related matters was April 20, 2006; however, he was transferred into federal custody pursuant to the detainer that had been issued based on this offense. The FBI took Mansfield on April

20, 2006 for questioning. See PSR ¶ 15, at 5. During that questioning, Mansfield gave a confession. See id.

## PROCEDURAL BACKGROUND

Counts 1 and 3 of the Redacted Indictment each charged bank robbery contrary to 18 U.S.C. § 2113(a). Counts 2 and 4 charged the same offense. Each count involved a different bank and a different date. Neither the United States nor law enforcement charged or alleged that Mansfield had a gun in any of the bank robberies.

Mansfield pled guilty to Counts 1 and 3 of the redacted Indictment. In his plea agreement, Mansfield pled guilty to robbing two banks in Albuquerque. In exchange, the United States agreed to dismiss two other bank robberies that Mansfield committed.

On August 1, 2006, the Court set the sentencing hearing on September 26, 2006. The USPO disclosed the PSR on August 29, 2006. The base offense level for 18 U.S.C. § 2113(a) is found in U.S.S.G. § 2B3.1 and is level 20. See PSR ¶ 36, at 9. There is also a two-level increase when property of a financial institution is taken. See id. ¶ 37, at 9. The USPO also applied a multi-count adjustment of two levels. See id. ¶ 55, at 11. The USPO gave Mansfield a three-level reduction for acceptance of responsibility. See id. ¶ 57, at 12. The USPO calculated Mansfield's criminal history category at category I. See id. ¶ 64, at 15. The USPO also applied the § 2B3.1(b)(2)(E) increase as to each count Mansfield pled guilty based on the impression of a bank teller and not on any physical evidence. See PSR ¶¶ 38, 46, at 10, 11.

The parties jointly moved the Court to vacate and reschedule the sentencing hearing. On September 15, 2006, the Court reset the hearing for November 20, 2006.

Before filing these objections, Mansfield made known by correspondence his objections to

the USPO, who prepared the PSR. He also sent a copy of that correspondence to the Assistant United States Attorney ("AUSA") prosecuting this case. The USPO did not resolve his objections to his satisfaction.

On October 13, 2006, Mansfield, through his appointed attorney and pursuant to rule 32(f) of the Federal Rules of Criminal Procedure and U.S.S.G. § 6A1.3, p.s., objected to portions of the PSR: (i) page 1, Date of Arrest and Custodial Status; and (ii) page 10, paragraph 38, which applies specific offense characteristic U.S.S.G. § 2B3.1(b)(2)(E) and, based on Application Note 2, increases the advisory sentencing guideline calculation by three levels. Mansfield provided a copy of his Formal Objection both to the AUSA and to the USPO. Mansfield noted in his Objection that, because the objections therein are based upon legal arguments, the appropriate responsive party would be the opposing party – the AUSA. Mansfield requested a hearing on this Objection, but stated that the hearing may be on the date set for sentencing. Mansfield also indicated that he might present further or an expansion of the arguments he made in his motion at a hearing on this Objection, which he agreed might be at the time set for sentencing.

The United States did not file any objections to the PSR. The USPO received Mansfield's objections to the PSR on October 17, 2006. On October 19, 2006, the Probation Officer disclosed to Mansfield and the United States' counsel an Addendum. The USPO asserts that the arrest date, and the three-level enhancement in paragraphs 38 and 46, are correct and appropriate. At the sentencing hearing, Mansfield tendered to the Court written documents that he had already provided to the AUSA and the USPO. Mansfield also withdrew his objection to paragraphs 38 and 46 of the PSR. See Transcript of November 20, 2006 Sentencing Hearing at 3:2-15

(Steinmetz)("Transcript").[1]

## SENTENCING METHODOLOGY

When a defendant objects to a factual assertion in his PSR, the burden shifts to the United States to prove the existence of the fact by a preponderance of the evidence. See, e.g., United States v. Shinault, 147 F.3d 1266, 1278 (10th Cir. 1998); United States v. Easterling, 921 F.2d 1073, 1078 (10th Cir. 1990). The Rules of Evidence do not apply at sentencing, and the United States may prove the applicability of the offense level increase by any means so long as the Court considers it sufficiently reliable. See Fed. R. Evid. 1101(d)(3).

## U.S.S.G. § 2B3.1(b)(2)(E) AND INTERPRETATIVE LAW

In robbery cases, pursuant to U.S.S.G. § 2B3.1(b)(2)(E), "if a dangerous weapon was brandished or used," increase by three levels. The commentary to that section, however, indicates that a defendant does not in fact have to brandish or use a weapon to satisfy this section. Rather, according to U.S.S.G. § 2B3.1(b)(2)(E), Application Note 2, the increase is applicable if the defendant uses any object in certain manners. An object shall be considered a dangerous weapon "if (A) the object closely resembles an instrument capable of inflicting death or serious bodily injury; or (B) the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury."

The United States Court of Appeals for the Tenth Circuit has held that § 2B3.1(b)(2)(E) is triggered merely by a robber placing his hand in his pocket so as to give the impression that he possesses a dangerous weapon during a robbery. See United States v. Farrow, 277 F.3d 1260, 1266-

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

1268 (10th Cir. 2002)(citing cases). A defendant does not have to possess a weapon – or, indeed, any object at all – so long as he used his hand in some way to convey to his victim the impression that he possessed a dangerous weapon.

While there must be some object to support a finding of possession of a dangerous weapon, a concealed hand may be such an object. See id. at 1267. In United States v. Farrow, the Tenth Circuit also stated that, "although the victim's perception of the object may be relevant to the [factual] inquiry, her subjective state of mind is never controlling on the outcome." Id. at 1268. The Farrow Court upheld the three-level enhancement based on the totality of the evidence, including the victim's perspective, and the defendant's behavior and spoken words.

Additionally, in United States v. Farrow, the Tenth Circuit specifically relied on its previous decision in United States v. Mitchell, 113 F.3d 1528, 1531 (10th Cir. 1997), and looked at three factors to determine whether, pursuant to U.S.S.G. § 2B3.1(b)(2)(E), the three-level enhancement should be applied. The three factors are: (i) whether the situation appeared dangerous; (ii) whether the defendant intended to intimidate; and (iii) whether the bank personnel were reasonable in their fear of death or injury. See United States v. Farrow, 113 F.3d at 1268 n.7. Other cases have addressed this or similar issues. See United States v. Yoho, 147 Fed. Appx. 794, 796-98 (10th Cir. 2005); United States v. Dean, 135 Fed. Appx. 161, 162-65 (10th Cir. 2005); United States v. Sanders, 92 Fed. Appx. 749, 750-51 (10th Cir. 2004); United States v. Maxwell, 90 Fed. Appx. 305, 305-07 (10th Cir. 2004); United States v. Abbott, 69 Fed. Appx. 936, 936-38 (10th Cir. 2003). In United States v. Maxwell, the Tenth Circuit upheld the three-level enhancement, based on the entire context of the offense, including the teller's reaction, the movement of the defendant's hand to his pocket in reaction to a question from the teller, and the defendant's potentially threatening words ("You better

have more than that"). See United States v. Maxwell, 90 Fed. Appx. at 305-07. The Tenth Circuit concluded the victim was intimidated, because she thought the defendant carried a weapon and affirmed the District Court's decision. See id. at 307.

## ANALYSIS

Because Mansfield withdrew his objection concerning the three-level sentencing enhancement set forth in paragraphs 38 and 46, the Court can overrule that objection without considering it further. The Court, therefore, need only assess Mansfield's objection regarding his date of arrest and custodial status.

### 1. **Date of Arrest and Custodial Status Objection**.

18 U.S.C. § 3585 applies to a calculation of a term of imprisonment. Subsection (b) allows for credit for prior custody for any time spent in official detention before the date the sentence commences "(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed."

Mansfield disputes the date on which he came into custody; the United States, however, adopts the position set forth in the Probation officer's Addendum to the PSR. Mansfield argues his date of arrest is April 15, 2006 and objects to the PSR, which lists the date of arrest as April 20, 2006. The USPO asserts that Mansfield's date of arrest is April 20, 2006. Mansfield maintains that it was the federal hold that kept him in custody from April 15th to April 20th. He has not received credit for that time in custody on any charge. Mansfield contends that, pursuant to 18 U.S.C. § 3585, he is entitled to credit on his federal sentence for those five days in custody.

Mansfield requests that the Court correct page one of the PSR to read: "Date of Arrest: April 15, 2006." Alternatively, Mansfield asks the first page to read: "April 15, 2006; Transferred to

Federal Custody April 20, 2006." Mansfield also requests that Custodial Status on page one of the PSR read: "The defendant has been in custody since the date of his arrest April 15, 2006 (165 days in custody through September 26, 2006; or updated: 220 days in custody through November 20, 2006)."

The Court sustains Mansfield's objection in part and overrules it in part. The Court acknowledges Mansfield's concern, but notes that it is foreclosed from being too specific in its language, because, in part, the state traffic offenses Mansfield was arrested for on April 15 still must be resolved. The Court will order that the PSR be reformed to reflect that Mansfield was arrested on state charges on April 15, 2006, transferred to federal custody on April 20, 2006, and has been in official custody, state and/or federal, for 165 days through September 26, 2006 and 220 days through November 20, 2006. See Transcript at 15:7-11. Editing the PSR in such a manner will allow the Bureau of Prisons to accurately calculate Mansfield's time in custody once his state traffic offenses are resolved. See id. at 16-19.

**2. Reasonable Sentence.**

There not being any objections to the PSR's factual findings other than the one dealt with at the hearing regarding date of arrest and custody, the Court adopts those factual findings as its own. Based on those findings, Mansfield presents an offense level of 24 and a criminal history category of I. With such an offense level/criminal history category matrix, the advisory guidelines provide a sentencing range of 51-63 months.

The Court considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant and believes that, with the reduction for acceptance of responsibility, the guideline range is appropriate here. The Court also considered,

in light of the materials Mansfield submitted, the factors listed in 18 U.S.C. § 3553(a). Having done so, the Court concludes that a sentence of 51 months, the low end of the guideline range, reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public. Further, the Court believes that a 51 month sentence is sufficient, without being greater than is necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act.

**IT IS ORDERED** that the Defendant's Objection to Presentence Report is sustained in part and overruled in part. The Court commits Mansfield to the custody of the Bureau of Prisons for a sentence of 51 months.

James O. Browning
UNITED STATES DISTRICT JUDGE

*Counsel*:

Greg Fouratt
Assistant United States Attorney
Albuquerque, New Mexico

*Attorney for Plaintiff*

Ann Steinmetz
Albuquerque, New Mexico

*Attorney for the Defendant*